The only case on our docket this morning is 21-30320, Chisom v. State of Louisiana. Thank you, Chief Judge Richmond, and may it please the Court, I'm Liz Merle, Attorney General Liz Merle, on behalf of the State of Louisiana and the defendants. Your Honors, we're here this morning because Louisiana has effectively been placed by the District Court order under judicial preclearance for Supreme Court redistricting, contrary to the Chisom Consent Judgment, and contrary to law. A little background, which I know you've read the proceedings, but I'd like to just walk through a little bit briefly about how we got here. In 1992, the late Governor Edwin Edwards, Attorney General Richard Aiyub, and Secretary of State Fox McKiffin entered into a settlement with the original Chisom plaintiffs to resolve a voting rights lawsuit over Supreme Court districts that split Orleans Parish. After six years of litigation, including a trip to the United States Supreme Court, the parties agreed to settle prior to trial and without any party conceding fault. That was seven governors ago, five attorney generals ago, and four Secretary of States ago. The settlement judgment set out eight specific legislative objectives. Two or three of those were contingent on other things that might happen, which didn't, with an ultimate goal of creating a unified district, which would, by its nature, be a majority-minority district. If these objectives were accomplished, the plaintiffs agreed to dismiss their claims with prejudice, which the court proceeded to do in the initial judgment. In 2000, the parties entered into a modified judgment, and they agreed that it represented a final remedy. They did not express any intent to retain any continuing oversight because there was nothing left to oversee. The state, Louisiana, had done everything that we agreed to do. The plaintiffs in that amendment conceded that the 1997 Act 776, quote, meets the intent of all the parties to this litigation for final resolution of the matter. The state, after being sued in a different case more recently, asked for relief in this case pursuant to 60B-5, but the district's court below said no. Even now, when plaintiffs concede that the judgment is satisfied, the district court will grant only that there is a substantial issue, and that acutely illustrates the core of the problem. Federal courts have been cautioned by the United States Supreme Court and this court to take heed of federalism concerns and return control promptly to the state. The district court here, however, ignored these concerns and broadly subjugated the state's redistricting authority for an indeterminate period of time, effectively imposing judicial preclearance that the state did not sign up for and which is unsupported by any fact-finding or admission of fault. The court erred in two principal ways. First, the district court rewrote the agreement. That's subject to de novo review by this court. It's contrary to precedent regarding Prong 1 of 60B-5. The court omitted critical language. It created a purpose that subsumes the plain language of the settlement, and it elevated this newfound purpose over the action items that actually animate the agreement. Second, under Prong 2, it applied the wrong legal standard, or at a minimum, it misapplied it. The directive under Rufo, Dowell, Horn, and this court's precedent is to return power to the state, not to retain it. The flexibility standard was inverted to retain control instead of promptly returning it, and it improperly imposed the Dowell standard of removing the vestiges of discrimination, which is a standard in desegregation cases to this case, and it improperly imposed a burden to prove the jingles preclearance conditions are no longer met. I'm happy to take the court's questions, or I'll start with the individuals. General Merle, I have a question. I'd like to clarify the scope of the party's continuing disagreement about what Louisiana's obligations are to get out from under this consent decree. The reason I'm asking is because, as you know and as the court knows, there is a motion for an indicative ruling that is before the district court, and the original plaintiffs in the United States now apparently agree that the consent decree should be terminated. So what I'd like for you to clarify is does the state continue to disagree with the other side about what its obligations are to get out from under the decree, and specifically does Louisiana continue to disagree that it must provide some sort of proof of prospective compliance, such as submitting new maps to the district court or redistricting all of the districts of the Supreme Court of Louisiana in order to get out from under the decree, or do you still maintain that Louisiana has already satisfied its obligations under the decree and it should be terminated immediately? The latter. We believe that we long ago satisfied the terms of this decree, but obviously we're here because the district court disagreed with that. The district court imposed a standard upon us that it is impossible to ever meet. A forward-looking standard that requires the state to prove that we will never in the future violate Section 2 is an impossible standard for us to ever meet. Okay, so let me ask you over here in the corner. I'm soft-spoken and hard to see. It seems to me that Judge Morgan's ruling on indicative motion, preliminary ruling on the motion for indicative ruling, indicated that all the parties agreed to it except the Attorney General, and the Attorney General took no position. An explanation for that? Yes, Your Honor. We took no position because our position is that we satisfied the terms of the agreement and we don't need her permission. So I think that it would undermine our… You don't want the consent decree to go away other than on your own terms? I mean, if the indicative ruling would have said the consent decree is dissolved, what's wrong with that? And yet she fails to even agree with the plaintiffs or the defendants that it's over. I mean, we believe that it was over no later than 2000, and when the parties agreed that a final remedy had been implemented, Judge Morgan disagrees and believes that we need her approval to implement the very map that is pending now. So we don't believe that we need her approval for that, and that's our position. We think that the judgment was satisfied. We don't need her approval, but her indicative ruling does suggest that we do. Excuse me. Let me see if I understand. The district judge in this so-called indicative ruling only says that she recognizes that this is a substantial issue. She does not say, oh, yes, I'm going to dissolve the decree now. She just says, even though Louisiana has now redistricted and created two majority-minority, which were not required by the decree in any way, shape, or form, she says, oh, well, it's a substantial issue that may require, quote, extensive litigation. I mean, Judge Duncan, that's exactly why we have continued to object to being placed under the sum of the federal court, which I think is quite reason enough to seek a 60-D ruling that says that we are no longer subject to the court's approval and that this judgment has been satisfied. Since Act 7 was not before her on the initial motion, and since the attorney general did not consent or take part in or agree with the motion that was filed by the plaintiffs with that regard, what would have been her capacity to dissolve it? Well, she doesn't have jurisdiction right now, I think, because it's up here. But her indication is that we all have to go back and litigate this further in front of her under the standards that she established in her initial ruling, which we believe were legally incorrect. So it is still important that the court rule on the ruling that's before you. She established standards that are legally incorrect. The Dowell standard is incorrect. We are not required to prove that the vestiges of discrimination are no longer present. In a case where there was never a trial, there was never a finding of fact, and there was a settlement where the parties expressly stated that their desire was simply to avoid further litigation. Counsel, have either you or counsel for the plaintiffs ever taken the position that dissolving the consent order, and I'm talking about lately in connection with the district court motion, dissolving the consent order is one thing, dismissing the litigation is another, because there's nothing in the motion filed in district court that suggests that the entire lawsuit should be dismissed, only that the consent order should be dissolved. Is there a distinction? Judge Inglehart, you know, I was 21 or 22 years old when this judgment was signed, so I think there are people in the courtroom here who weren't born yet. All I can tell you is that the language of the judgment required the case to be dismissed, and it was. So I think that even the judgment that came after that, amending the consent judgment, acknowledged that it was a final remedy. So I believe the case was dismissed. It is a quirk of the case that, you know, we're still here on a case that was allegedly dismissed, but has a judgment that the plaintiffs claim to have continuing tentacles that bind the state even now. Would it moot the case if the plaintiffs filed a motion to dismiss here in this court? It certainly, I think that the court would grant that. What we're having to do is for the plaintiffs to concede that there's no need for the consent order anymore in light of recent developments, specifically the redistricting that just happened. Just file a motion to dismiss here. The issues that you've raised on appeal would be conceded. Well, Judge Inglehart, sort of bafflingly, I guess in this case, the judge did grant a motion to dismiss the case. I mean, so I think that, you know, it does sort of beg the question of whether a dismissal that already occurred, this is a judgment that purportedly still has injunctive effect. That is the problem. And so what we need is a ruling that clarifies that there is no longer any injunctive effect on this ruling, that it has been satisfied, there is nothing left to do. The state agreed and did the things that it said it would agree to do. And that the district court judge erred in creating a purpose that subsumes the very specific things that we agreed to do. And the court, in a much more complex agreement that had been heavily litigated over and over, back up and down from this court, acknowledged that the purpose needs to serve the specific items that the parties agree to, especially in an institutional reform case, are what drive the purpose. And this is a much more simple agreement, far more simple than some of the kinds of agreements that you've seen. In general, Merle, if the state redistricted and violated the Voting Rights Act, who knows, maybe it did, I don't know. Maybe these new maps will be challenged. I don't know. But if the state did that, the state would be subject to a lawsuit in federal court under the Voting Rights Act. So isn't that right? Yes, that's right. And it is right because we can never predict what will happen in the future, nor can we control it. I don't know who will stand in my shoes in the future. I don't know who will stand in the legislature in the future. I know that numerous people have changed in those offices over the last 30 to 40 years, and yet there's never been any attempt to undo the remedy that was adopted here, which was to consolidate the Orleans district. The problem is where the lines are drawn. And there may be, and there in fact was under the current map, a necessity to change those lines. And the district court judge's approach was, well, what's the problem? Why don't you just come back and ask me for permission? And we said, well, that's the problem. That is the problem. We don't want to have to come back and ask you for permission. We don't think that we have to come back and ask you for permission. And yet, here we are. Well, isn't this, I'm not hearing very well, isn't this the pending motion to dissolve the consent judgment the exact relief that the state is seeking? The pending motion to dissolve the consent decree is our motion that the judge ruled upon and that's before you. I don't think that's the motion that the plaintiffs filed. As I understand it, they filed a motion for an indicative ruling asking for how the court would rule if this all was before her again. Well, would you oppose a remand with instructions to the district court to grant the pending motion to resolve in light of Act 7? Judge Weiner, I think that the court erred as a matter of law with the ruling below and that it needs to be corrected. I don't think that sending it back and requiring us to undergo further litigation when our position is that we should have never had to be there in the first place is going to move the ball forward. It only perpetuates the problem of having incorrect legal standards that have already been applied to us in this case. Okay, here's what I don't understand. I understand what the plaintiffs asked the court to do is basically what you've asked the court to do, but you didn't join with them. And so the district court's like, well, I guess I've got to look at this because you're not joining. So what I don't understand is why y'all didn't have a phone call or a Zoom meeting and agree on what you can agree on and be done. I mean, it makes no sense at all to me given where we are now. Judge Haines, we did confer, and it would have undermined the state's position that we do not need Judge Morgan's permission because we satisfied the consent decree. So we took no position on their motion. It doesn't mean that we don't agree that the judgment has been satisfied. I would clearly disagree on when, but we don't disagree that it's been satisfied at this point. And Judge Morgan's position was it's a substantial issue. I mean, I think that only— Why hasn't it moved it that you both agree it's been satisfied? Even if you're disagreeing on the dates, the dates are in the past, so here we are in the present. Why hasn't it moved? Because the judgment hasn't been vacated. Well, I mean, the judge doesn't have jurisdiction yet because it's here, but also because you all didn't join. So I can imagine being the district judge and being a little bit unclear about what's going on. And so why—you said you talked. Okay, why couldn't you all just say to us we want to go back to the judge and just have them enter the order we asked for? Again, because we don't believe we should have to go back to Judge Morgan and ask her for her permission to rule. And so I don't think that we should be expected to take a position before the district court judge that undermines the position that we've taken all along and taken in pleadings before the court. I'm grateful that they now agree that the judgment has been satisfied. The problem still exists that the judge has imposed standards upon us, and if we go back, those same standards apply. If this were mooted but with some sort of Munsingware-esque vacature of the district court's standards, would that be satisfactory? Yes, Your Honor, that would be much more satisfactory because the problem is the judgment below, which is now being used in other cases, and will continue to haunt the state because it imposed extremely difficult standards that are legally incorrect and impossible for us to— I just don't understand, General. Did the state agree in 1992 to create two majority-minority Supreme Court districts? No. Did the state agree in 1992 that any new maps needed to be submitted to the Eastern District of Louisiana in order to get out from under the decree? And yet the plaintiff's motion in this case below, the Chisholm plaintiff's motion, is, well, now we agree it should be terminated because the state created two majority-minority districts and wants the district court to sort of sign off on the maps. Did the state ever agree to anything like that? No. No. And I go back to our first point about the decree itself, which I think is at the heart of the problem. The court actually wrote out the purpose of the state in settling this case to begin with. We settled the case to avoid further litigation. We never conceded any fault whatsoever, and we agreed to do some very discreet things. The interpretation that the judge gave to that judgment is very, very different from what the judgment actually says. Well, that's the reason most cases are settled. I mean, I think that's why people settle cases is so that there's a limit to any future litigation with that regard. So I don't understand how that's reading something into the settlement agreement that wasn't there. Because the document itself, Judge Douglas, is the basic fundamental starting point for determining what binds us. It is a contractual agreement between the parties to settle a case, and it's not the same as a case that went through a trial. But that's most settlement agreements. So our position would be that the same rules apply. It's contractual law. The state of Louisiana's law of contract is what applies to that agreement. And that contract law would say substantial compliance is the standard. We have perfect compliance, not substantial compliance. We exceed substantial compliance. It was perfect compliance. And yet we are still subject to the continuing tentacles of this decree under new standards that never apply. As I understand it, if you lose this case before our court, if you lose it, and a majority of this court says, you know, you did have a future compliance obligation. You didn't show it, so we've got to send it back. Then the district court could say, all right, well, there's new maps now. Let's see if you've complied. So if you lose here, then I could see you having to go back and do what the district court calls extensive litigation to show. But the premise is that if you lose here, if you win here, then the decree's over. Is that not right? That is correct. And to your point about the future compliance obligation, I would also point out that even under Dowell, the courts have looked backward at what the state has done in the past. There is no ability to, or I don't think we could even have agreed to that, much less the judge at the time having signed off on it, for us to prove something in the future that it is impossible to ever prove. But all we could ever have done is wait for the passage of time and show that we have been in good faith. We've never tried to undo what we had agreed to do, all of which is true. And so I think that even in these cases – Counsel, I want to understand. Did you say that if you win here, the litigation is over? Is that – I want to make sure that was the question. Judge Grace, I think if we win here, then it means that you've agreed that we have no future obligations, that we satisfy the obligations that we agreed to, and the agreement is over. So, yes, I think that means we don't have to go back to the district court and get – and have more litigation on whether, in fact, we satisfy – But if the settlement that you've reached is signed and agreed to, then the consent decree is over, right? We're talking about the past settlements. There's no new settlement. And if we signed a new settlement – Y'all haven't reached an agreement about the case that's pending before us right now? We agree in principle that the judgment is satisfied. We disagree on when it was satisfied. Our position is it was satisfied a long time ago. They take the position now that the state's acted in good faith and that we have in the creation of a new district that the judgment is satisfied. That's a new position for the plaintiffs. It is now the subject of this indicative ruling. There's no settlement agreement between us, and I could never sign off on such a settlement agreement because of exactly the position that we're in right now. We thought we did that. We thought we did that in 2000 when we entered an amended consent decree that said the final remedy has been achieved, and yet here we are. So how could I agree to a settlement that now – I mean, the ability for the state to sign off on a settlement like this where we believe that we have achieved a final remedy, and yet 30 years down the line, or in that case, since 2000, 23 or 24 years down the line, we are still litigating whether we achieved the final remedy, even though in black and white it says that we did. Given the procedural posture of the case now, and to avoid all of this confusion about a remand or what might happen in the district court, is there any reason procedurally why this court – I'm talking about the Court of Appeals – can't just enter a judgment of dismissal? I don't think there is any reason why you can't. I think that it is important for the court to clarify what the standards are for future consent cases and judgments. Well, sure, it would be in addition to any kind of explanation we would give. But just to make sure that nothing more happens in the district court, we would enter a judgment of dismissal so that there would be no doubt that the district court proceedings are done. I see no reason why you cannot do that. What extensive litigation would there be on remand if they've already agreed to terminate? Judge Douglas, we will have to go back to the court and litigate the question of whether the judgment has been satisfied. Has it been given the current position that the plaintiffs have taken? Well, apparently so, based on the indicative ruling. Well, the indicative ruling is procedural because we have jurisdiction of it right now. Well, I understand, but the standards that the judge has established for us in her prior ruling, the ruling that's before you on appeal, established the dowel vestiges requirement. They also require us to prove that the jingles preconditions no longer exist in this case because they were never proven to exist to begin with because there was never a trial. So we settled the case without any of those findings. And yet now we are faced with a standard of proof that is nothing that ever, ever occurred in the state. It is a combination of both the dowel vestiges standard and the jingles preconditions standard that we now have to disprove. That's what the judge imposed upon us. And so if we go back, then presumably that is the standard that we must meet in addition to showing that in the future no one will ever violate Section 2 again in the first instance ever. I have no ability to meet those standards. I can't do it. Ten minutes for about a left here from the other side. You've got ten more minutes. Thank you, Your Honor. Good morning, Your Honors. Leah Aiden for the Chisholm Plaintiffs, and may it please the Court. The narrow question before Your Honors today is whether the District Court abused its discretion in holding that the Attorney General failed to meet her evidentiary burden to terminate the consent decree under Rule 60B of the Federal Rules of Civil Procedure. It did not. The District Court, which has afforded heightened discretion in an institutional reform case like this one, was not so unwarranted in holding that the Attorney General failed to meet her heavy evidentiary burden to seek relief under either Clause 1 or Clause 3 of Rule 60B. Under the third clause of Rule 60B, which permits relief upon a significant change circumstance, the District Court correctly applied RUFO, which no party disputes is the proper legal framework, to hold that the Attorney General failed to show that alleged malapportionment in the judicial districts was, in fact, a significant change in circumstances that made continued operation of the consent decree inequitable. Indeed, the recent passage of Act 7, which is operative now and will go into effect this year, readily disposes of the Attorney General's claim under the third clause, sharply undermining her argument that the consent decree poses grave federalism concerns or prevents the state from fulfilling a core function. To the contrary, Act 7's enactment, with the consent decree in place, shows that Louisiana's legislature has retained its authority to redraw the Supreme Court districts to address malapportionment and to do so without diluting the opportunity to elect a Black voter in an Orleans Parish-based district. And under the first clause of Rule 60B, which permits relief upon a showing that the judgment has been satisfied, released, or discharged, the District Court did not abuse its discretion in holding that the Attorney General failed to show that the consent decree's final remedy had been achieved under any legal standard. The District Court properly read the four corners of the consent decree, which repeatedly and unambiguously requires the state to ensure that future elections for the Louisiana Supreme Court are non-diluted for Black voters in Orleans Parish. The negotiated requirement to ensure structural reform through Section 2 compliance is embodied throughout the express text of the consent decree, including in the preamble of the consent decree, in Section B, and in Section C, which not only contains a list of specific remedial measures that the state must take to achieve that purpose, but also in the last sentence of C-8, a forward-looking remedial measure that requires the Orleans Parish-based district to remain in place for future elections unless and until the Attorney General can make a proper showing under Rule 60 for termination of the consent decree or modification. Whether applying DOW or substantial compliance or some other standard in Clause 1, the Attorney General simply didn't show on the record below that this forward-looking, durable remedy had been achieved. In other judgments, as this consent decree is by its express terms, which call for similar, prospective, durable remedies, courts have looked to whether there is evidence to show that the harms that gave rise to the litigation would not immediately resume once judicial oversight ends. On the record below, devoid of concrete evidence like Act 7 now provides, the District Court properly rejected the Attorney General's motion for failing to show that if the consent decree were terminated, vote dilution would not immediately recur for Black voters in Orleans Parish. Redistricting is at the heart of this case. In 2021, when the District Court issued its eminently warranted decision, the state had not redrawn Louisiana Supreme Court districts except for in 1997 when it was carrying out the short-term remedial actions of the consent decree. With Act 7, it has redistricted for the first time in 20 years and it has maintained an opportunity to elect districts for Black voters in Orleans Parish. As indicated in our letter to this court and in the pending motion before the District Court, Chisholm plaintiffs believe that Act 7 constitutes a durable remedy that shows prospective Section 2 compliance, consistent with Rule 60, consistent with the agreement's terms, and guiding case law. And the District Court has indicated agreement, finding that Act 7 raises substantial issues regarding whether the Attorney General's motion to dissolve the consent decree should be granted, which the District Court will consider if this court exercises its discretion to remand. While the District Court certainly did not abuse its discretion in denying the Attorney General's original motion to dissolve, this court need not reach this question on appeal given the recent development of Act 7 and the District Court's indicative ruling. In the interest of judicial economy and efficiency, Chisholm plaintiffs respectfully request that this court hold its decision in abeyance and remand to the District Court to consider the party's motion in light of the new significant evidentiary record, including with its instruction to dismiss, as Justice Wiener and Haynes suggested as an option. And then the case would be over, Judge Duncan. If the court, however, decides to reach the merits, however, Chisholm plaintiffs respectfully request that the court affirm the District Court's ruling because it did not abuse its wide discretion in denying Louisiana Attorney General's motion on the record before it. And then we go back to the court, and it's over, Judge Duncan. It does not require extensive litigation, Judge Douglas. To conclude, before I welcome the court's question, this case is not dismissed as we stand here because, as you know, the Attorney General moved under Rule 60B to dissolve the Consent Decree. So they thought that there was something more for the lower court to do. And that is reflected in the express terms of the Consent Decree that they agreed to that said that the District Court has the authority to determine what the final remedy is. Act 7 is operative now. It does not require the District Court's consent to go into effect. But what the Consent Decree that the state entered into, and that is the Governor, the Attorney General, the Secretary of State, the Supreme Court, the Chief Supreme Court of the Louisiana Supreme Court, the Associate Justice of the Supreme Court, they agreed to be governed by Rule 60B. And there is a process that cannot be abused in order to dissolve the terms of the Consent Decree that the state willingly entered into, even without a finding of liability. None of which is required. As this court considered and threw, there is no need to have a finding of a violation in order to be subject to the structures of the Consent Decree. And for these and other reasons, we request that the court allow the District Court to quickly dispose of this case because the Chisholm plaintiffs agree that Act 7 provides concrete evidence that affords the Consent Decree the ability to be dissolved. And we ask that the court allow us to proceed in that regard. And I welcome the court's questions. Counsel, I'm quoting the District Court's ruling. Quote, The state has complied with the terms of the consent judgment by enacting Act 512 to create a temporary Chisholm seat and Act 776 to create the current District 7. End quote. That's a quote from the District Court. Those actions happened 20 years ago. What more was Louisiana required to do after doing that to satisfy the Consent Decree? According to Provision C-8 of the Consent Decree that it agreed to, the reapportionment shall be effective on January 1, 2000 and future Supreme Court elections after the effective date shall take place in a newly reapportioned district. They needed to ensure future elections happen in a properly apportioned district. And in order to get out of Rule 60B, they have to come forth and show evidence that upon dissolution, there is going to be a durable remedy. Before the District Court, they offered a patent. They offered the Allen decision. They offered no evidence. You are saying that Louisiana 20 years ago agreed to a judicial preclearance regime in this Consent Decree? That's not correct, Your Honor. Below, when the District Court said, what evidence would Louisiana have to do, the District Court said, well, you could come up with a new map, a new plan for districts, and present it to me. Why is that not a judicial preclearance regime? Because the structure of Rule 60 requires evidence of durability. Even in Horn, which we recognize balances the need to not allow Consent Decrees to operate in perpetuity, even Horn requires that there be a durable remedy. What in the world does that mean? That's just law noises. What is a durable remedy? This remedy has been in place for 32 years. But they have not redistricted since 1997. Does the Consent Decree require them to redistrict and then submit any new redistricting to the District Court? Any act, according to the expressions of the Consent Decree, does not need to be blessed by the Consent Decree to go into effect, just like Act 7. But if you want to dissolve, which is the most draconian form of getting out of a Consent Decree, or you want to modify a Consent Decree, the process requires evidence. Below, the State did not provide evidence. Besides the 32 years of perfect compliance with the Consent Decree, that's not evidence? The 32 years is past compliance, but they agreed to a full compliance. But all compliance is past compliance, is it not? In other words, you're never going to be satisfied because everything's prospective. We haven't seen it, so you can't prove it before the fact. Therefore, the Consent Decree stays in effect. It is significant that the Chisholm District was established and that they have held elections in that district for 30 years. We do not dispute that. Yes, they complied with the terms of the Consent Decree, but you're here basically eschewing any judicial preclearance regime, but you won't get away from it. That's exactly what you demand. But this part looks at what happened in the Alabama State Board of Education case or any of the NLRB cases involving picketing or involving any unconstitutional behavior. But we're looking at what happened here in this Consent Decree over the last three decades, and I'm just struggling to see why that's not enough. It's not enough because the state agreed to ensure that future elections. Ad infinitum. Elections are how often? Elections happen every 10 years, so in fact there have only been three elections. How many is enough then? And, Bernie, this court found four elections where only two of them were contested and two were uncontested were insufficient even when the parties wanted to modify the Consent Decree. And that is because the court needs to be comfortable that if they dissolve this… Why should we be comfortable now? Why should we be comfortable now? There's no evidence. You said no evidence. They haven't done anything. All they showed were statutes and elections, which is where we stand now. There is evidence. How is Act 7 any different than Act 776? For example, there is evidence. In 2012, this Consent Decree required that the beneficiaries of the Chisholm seat receive all of their years of service to count towards their seniority. And that was resolved in 2012. Isn't it a fact that, though this decree was entered the 32 years and the state knew what the provisions were, in fact, when Justice Johnson sought to move up to be Chief, the state did not operate. That occurred. She had to sue in federal court to get a decree that the Consent Decree allowed her to move up on her seniority from the Fourth Circuit seat to even be Chief Justice. So if it's so self-evident that all this compliance occurred, why did she have to sue in federal court in order to get a decree that she should ascend to Chief Justice? The state is saying, well, it's been satisfied because she got to be Chief Justice. She had to sue independently. Isn't that correct? That is correct, Your Honor. And additionally, Judge Morgan heard not only about that, but heard that beginning in 2019, in the Middle District of Louisiana, the state has argued that Section 2 doesn't even apply to judicial elections, which is inconsistent with the Supreme Court holding in Chisholm in this very case. And so the District Court had the discretion to consider the 30 years, the significant 30 years of holding elections in the District Court. It had to consider the 2012 dispute. It considered that the state was disavowing that Section 2 even applied to judicial elections. When was this? And it said, give me something concrete that shows me that immediately upon dissolution, we are not returning to the exact same position that we would be in and that the plaintiffs were in So despite the argument about compliance, there were issues both in 2012 and 2019? Beginning in 2019. There are two counter facts that did not give the court confidence, which the District Court had the discretion to consider in the totality of evidence. And again... Did the District Court recite those? Did she rely on those in her reasoning? Yes, she extensively relies upon those in her reading. She even goes further to discuss how at a hearing before the District Court, the state accepted that word of the consent decree to be dissolved and returned to the multi-member system that existed prior to the lawsuit. So the court is hearing all this. But let me just say, none of this essentially matters now because we have now come to the court, to the District Court and to you, and to say... Counsel, if that motion... Counsel, counsel, counsel over here. If that motion were to be granted, would that terminate the litigation in District Court and you agree that any future action brought under the Voting Rights Act relative to state Supreme Court districts would have to be brought... would have to be filed anew? In other words, you could not go back to this particular litigation for any type of Voting Rights Act issue. Is that clear? I think that is... Yes. We'd have to start new Section 2 litigations depending upon the facts that are present at the time and when that happens. But we should not be concerned necessarily that that's going to happen because Act 7, again, goes into effect this year. Counsel, can I... I want to make sure... I want to make sure I understand. He said if that motion is granted. Obviously, you know what motion he's talking about. I'm not sure which one he's talking about. What motion are you talking about? We, the Chisholm plaintiffs, with the support of the Department of Justice and joined by Justice Johnson, we have moved the lower court to dissolve the consent decree if this court remands this case back to the District Court. That can happen immediately. We are not asking... And what is the... That's the non-settlement that... I guess when I refer to it as a settlement, but it's a... It's not a settlement because we do not have... Well, we can't call it that, obviously, but it's an agreement. I didn't agree with that. I just... The Chisholm plaintiffs do not dispute that if we return to the District Court, this consent decree is done because we believe that Act 7 provides evidence of a durable remedy. It does not... I just want to... Is there something I could call an agreement? I can't call it that. The Chisholm plaintiffs' part, we agree. On what basis are you moving in the District Court to terminate the decree? On the basis that there has been Act 7. That's right, right? That's right. Okay, so doesn't that mean that if Louisiana had not passed Act 7, then you would not agree that the decree should be terminated? That is correct. Did the decree, did the consent decree, require Louisiana to redistrict its Supreme Court districts and create not only a majority-minority district in Orleans Parish, but also a majority-minority district in another part of the state? It did not. This Court in Allen made clear that the consent decree only governs New Orleans Parish. It also doesn't require a map. As this Court recognized, as the panel recognized, as the District Court recognized, they could have come up with data. It doesn't require a map? You said that the consent decree required a map? Data that said that if you break down the structure, there's no need for a single-member district in Orleans because the underlying conditions that gave rise to the litigation no longer exist. But the state was unable to produce data to say, we don't need a single-member district anymore because, in fact, maybe the conditions still require it. Here's what the District Court says. Quote, Why don't you formulate a plan as a legislature, adopt a plan, and then come and say that we'd like the consent decree amended to incorporate this new plan? That was the District Court's view on how do you comply with the consent decree. How is that any different than a judicial preclearance regime? It was an exemplar, but the Court went on, and the panel recognized, Judge Wiener and Judge Stewart recognized that they could have come up with a roadmap, they could have expressed a commitment to a durable remedy, they could have produced data. There is no particular form of evidence that any party needs to adduce in order to comply with Rule 60B, but an act now has been passed that plaintiffs have no concerns with and that would resolve this litigation. The Court need not reach the merits because the District Court was warranted in rejecting the lack of evidence that was before the Court, but there are significant change facts now. The District Court has the authority, under the expressed terms of the consent decree, to determine what the final remedy is, and to the extent that the state agrees that the act is legal and it should be operative, there is no reason why this couldn't be disposed of within 30 days. But the District Court would still be deciding it on the District Court's previous rulings and standards, which are very much hotly contested, because if they don't, if we're trying to decide whether the act disposes of it, it shouldn't, if the state is right, it shouldn't be determined based upon the standards that the District Court has established to determine that it'll still be using the wrong standard in evaluating the 60B. And so, unless there's some sort of drastic munching away vacature or something that says that those have always been the wrong, you know, and says that's wiped out forever and you're going to use the standards that we say should have been used all along. I don't understand how you say it just is a breezy mootness in the District Court without still using the wrong, if it is indeed the wrong standard. Can you help me? I have two responses to that. The first is that there are two clauses under which the AG moved under. Clause 3 is governed by RUFO, that involves change, facts, and circumstances. No one disputes that's the proper legal framework, and Act 7 reflects that. I picked 5, didn't you, or something instead of 3? You didn't pick 3. So, in Clause 1, which is about satisfaction, is where the court looked to DAO. We think that makes sense because it is another federal case involving structural reform. But regardless of the standard, whether it is DAO, whether it's substantial compliance that the state wants the court to use or some other standard that this court comes up with because there's little case law on application of Clause 1 in the Rule 60B context, the state failed to meet it because it did not provide evidence that it complied with all terms of the Consent Decree. Even substantial compliance requires the court to look at has the party satisfied the purpose, and how can you have satisfied the purpose of the Consent Decree, which is to establish a durable remedy without evidence. And that is all the district court applied. So we don't need this court to embrace DAO in the context of Clause 1, even though at least six other circuits have applied DAO in the non-desegregation context. We don't need this court to do that because under any standard, it was not so unwarranted for the court to say, show me some concrete evidence that if I dissolve this Consent Decree today, that tomorrow we are not in the exact same position that we were in that gave rise to this litigation, which we should all not want to be in for purposes of having to waste resources to relitigate the same issues. Act 7, once again, resolves that because not only does it create a durable remedy in Orleans Parish and evidence of that, but it also corrects the malapportionment, which is the whole reason why the state said they needed to redistrict. It resolves everyone's problems, which is why this is easily disposed of in light of that. Respectfully, Chief, I just want to call attention to the time. Y'all were asking questions. All right. Oh, I'm sorry. I did not see that. I'm happy to take more questions, but I'm out of time. That's your argument. Thank you, Your Honor. Oh, I'm sorry. I'm sorry. Good morning, and may it please the Court. Anna Baldwin for the United States as appellee intervener. I want to start with the legal impact of the passage of Act 7 on this case. So as the Chisholm plaintiffs have argued, the United States agrees that Act 7 creates a durable remedy and that this litigation can be resolved. We think the most appropriate way would be for a limited remand back to the district court to dissolve the consent decree in light of Act 7. The other significant thing that Act 7 does is show that the arguments that the state was making before the district court about the inability to redistrict and that, you know, prospective application of the consent decree was inequitable, those arguments had no basis. The consent decree has been in place throughout, and the state redistricted. That is exactly how things were supposed to work. According to the terms of the consent decree, yes, it established a single-member district with the purpose of ensuring that the voting power of black voters in Orleans Parish would not be diluted, but the literal terms of the consent decree also provided that after each decennial census, the state could redistrict. For 30 years, the state chose not to redistrict. It then came to the district court on the eve of saying, well, now we would like to redistrict. Please let us out of the consent decree. That is not a durable remedy in terms of the standards that the Supreme Court established in Horn. A durable remedy, to answer your question, Judge Duncan, a durable remedy is some kind of confidence that the parties are not going to revert immediately back to the prior circumstance. So you're not caught in a whiplash of, you know, we do this checklist, and then you can dissolve the consent decree, and you could revert. And the district court here had reason to be concerned about that. There was litigation going on in the Middle District of Louisiana about compliance with Section 2. In that case, as my friend pointed out, the state argued that Section 2 of the Voting Rights Act did not apply to judicial districts, notwithstanding the holding of the Supreme Court in this case. When the state went before the district court with its Rule 60 motion, the state said, if you grant this motion to dissolve, the legislature will be operating on a blank slate. The legislature did, you know, Attorney General did not come in and say, if you dissolve, we agree Section 2 applies to judicial elections. We agree that the conditions in Orleans Parish are such that there would have to continue to be some kind of district that gives black voters equal opportunity to elect because there's racially polarized voting. Or on the other hand, we know that there's not racially polarized voting, so the state doesn't have an obligation to continue to have a majority-minority district. Instead, the state went in and said, we want to dissolve the consent decree. We'd like to operate on a blank slate. And that's just not what a durable remedy is. Now, it is true, that's not the same thing as a judicial preclearance requirement to answer some of the court's prior questions. Preclearance says you have to get court permission before the legislation is effective. That is not the situation we're in today. Act 7 is effective. What the consent decree does is reserve jurisdiction. So does the parties have a question, have a complaint about compliance with Section 2, they go back to the court and can seek to have it enjoined. But no one is waiting for federal court action for Act 7 to be effective. Act 7 goes into effect this year per the effective date that the Louisiana legislature passed. What it actually shows, the legislature has always had the ability to redistrict. The district court was simply requiring some kind of evidence that there would continue to be a durable remedy. There doesn't have to say, the consent decree, it's very true. It doesn't say, you must show me a map. And in fact, we view that as something that is friendly to federalism and the state's ability. The state could come in and say, in fact, these districts are permanent. We're never going to redistrict in the future. We've complied for 30 years. It's time to let us out of the consent decree. Those would be very different facts than the facts that we have here, which is, yes, has the consent decree been in place for 30 years? Absolutely. There have been three uncontested elections. These are very long terms. The legislature never sought to redistrict at any prior point. It's only when they seek to do the thing that is at the very heart of the consent decree that they ask to be let out of court supervision. Counsel, can you help me understand why you're resisting the merits so much? Your friend from the Chisholm plaintiffs did the same thing. I don't understand why the United States government is concerned between these two, imagine two different opinions that come from the ombud court and explain to me why you like one and you don't like the other. One says, Act 7 satisfies the consent decree. The consent decree is hereby dissolved, reversed, and rendered. That would be option one. And then option two is, Act 776 satisfied the consent decree in 2000. The consent decree is resolved as of 2000, reversed, and rendered. What I don't understand, because obviously you're saying statutes satisfy it either way, so I don't understand the distinction on the merits about why you think 776 is different than 7. They're both durable statutes. But more importantly, I don't understand from your perspective why it would matter if we did A versus B. Why does it matter if we say it's resolved as of today in May of 2024 versus it was resolved in 2000, or 2012, or 2018, or whatever year in the past? Can you explain that to me? So just in terms of, it's up to this court how to extend this court's judicial resources. But the United States recognizes that consent decrees are not meant to exist in perpetuity. And the United States is standing here today saying, in our best judgment, the fastest way to resolve this is simply to remand to the district court without having to get into debates about when the consent decree ended. That's our best judgment to this court. But as to whether or not Act 776 versus Act 7, that's a legal question about the language of the consent decree, and we think that it was meant to have perspective. But don't they have exactly the same impact in the sense that this case is over? What would be your equity in whether we did it as of 2000 or as we did it as of 2024? I don't understand. It would be an incorrect interpretation of the plain language of the consent decree. It would offend the Supreme Court standards in horn that says you have to have a durable remedy. And frankly, Your Honor, I'm not aware of any case in which a defendant in a consent decree has come to the court and said, again, we disagree about that it's just a checklist. But even a case where it says, well, this is just a checklist of eight items. We've satisfied them, and now we want to return. We want blank slate to go back to the prior. But they haven't committed to you at all that Act 7 is durable. I've looked at the record, and I looked at what you all filed in the indicative ruling. I don't see anything in there where they say, look, we're not going to repeal Act 7 tomorrow. So why should I be confident that the state of Louisiana has turned a corner? And why shouldn't we leave the consent decree in place to make sure that Act 7 stays in place? Your Honor, the United States takes seriously the principles of federalism and the state is entitled to a presumption of good faith when it passes the legislation. And again, the consent decree doesn't. But that doesn't apply to Act 776, right? We don't get a presumption there. It's just Act 7. No, you get the four corners of the consent decree that we disagree as a matter of law that Act 776 was the final remedy. And in fact, the state, as of 2021, came before this court and also disagreed that it was the final remedy. And it said in the Middle District litigation that the consent decree created continuing and ongoing obligations. Until recently, we were all reading from the same hymnal on that. But the point is, the United States has never thought that this is a preclearance requirement. The Louisiana legislature has always had the ability to redistrict. If the redistricting in Act 7 was the durable remedy, why did the consent decree never require that? Because the consent decree gave the state, it wasn't from our perspective, in our understanding of the litigation. Prior to the consent decree, the Louisiana Supreme Court districts had been redistricted once. No, no, no. What I'm getting at, I guess, is if Act 7 is the durable remedy or the evidence of the durable remedy that the state was required to produce, it's just curious to me that that's not required anywhere in the consent decree. The consent decree doesn't say this is the only evidence of a durable remedy and leave you that as a positive. Well, this is the only evidence that the plaintiffs have identified of the durable remedy that you've been satisfied with. But it's just curious to me that it's nowhere mentioned in the consent decree. Your Honor, I would disagree. But in front of the district court, the United States didn't take the position that only an enacted map is the only thing that would satisfy the consent decree. Proposed maps could have. Redistricting criteria could have. Did you say proposed maps that would have to be presented to the district court as proof of a durable remedy? A proposed map that, you know. A proposed map. A proposed map could. Did they submit any evidence of a durable remedy? What was their evidence under the durable remedy? Their evidence was that we've had elections, these three uncontested elections, in which, you know, African-American candidates have been seated to the seat. That, you know, that is not evidence of a durable remedy. And if I could talk a little bit about the ballot standard, you know. Would six decades of candidates, of black justices from the Chisholm district have been enough instead of three? Your Honor, the complete factual context matters. How about 10? Is that a bit enough? If the state had never intended to redistrict and said, look, these are essentially permanent districts. We're not intending to redistrict. Please release us from this consent decree. Those would be entirely different facts from, we have never done the very thing at the heart of the consent decree. Release us so that we can do it for the first time outside of court supervision. This is the 11th Circuit's decision in Allen, where you had a consent decree regarding teacher examinations that had been found to have a discriminatory impact. The state stopped having those examinations for 10 years. And then the legislature said, well, you need to have a new test. Counsel, I'm confused. How could the state agree to never redistrict the Chisholm district without offending Section 2? Because as I understand the record that's in front of us, at the time of this redistricting, a vote within the Orleans Parish was worth 1.4x a vote anywhere else in the entire state of Louisiana, which seems like it has a serious voting rights problem for other districts. How could the state even come in and promise to the world, we're never touching the district lines? I don't get it. This is the unique context of judicial elections. And I'm glad you brought that up, Judge Holden. Because unlike in other contexts where you can count on that there's going to be a decennial redistricting every time, the one-person, one-vote requirement doesn't apply to judicial elections. And so it's up to the state to decide whether to redistrict. And so notwithstanding the fact that the districts had always been malapportioned, the state didn't choose to do that until it decided at the very point when it's being sued for a Section 2 violation in another district, it's saying Section 2 doesn't apply. And then it comes in and says, the very time we're going to do the first time another redistricting at the very heart of this consent decree, let us out. And the district court didn't abuse its discretion in doing so. Section 2 applies to judicial elections, but malapportionment principles don't. Those are the holdings of Wells v. Edwards and Chisholm v. Romer. That's the Supreme Court decision. In Chisholm, the Supreme Court considered and rejected the fact that one-person, one-vote does not undermine the application of the Voting Rights Act. And that is part of the oddity of the fact here, Your Honor, where you could have a 30-year period without a redistricting, there's just no evidence of ongoing forward-looking compliance. And so if I could, just a little bit on the Dow standard to give the court, again, we think your time has expired. Thank you, Your Honor. We've got one more. May it please the court. Noor Ahmed for Justice Johnson. The consent judgment did its job. Its end date has been reached. Instead of suffocating the black vote and entrenching vestiges of past discrimination, Act 7 does the opposite. It definitively and prospectively provides black voters with the opportunity to shape the most significant legal decisions made by the highest court in this state. With the passage of Act 7, enacted into law 16 days ago, the requirements of Rule 60b-5 have been met. Act 7 changes the trajectory of this litigation. For the first time in nearly three decades, the Supreme Court districts in Louisiana have been redrawn. And this new map complies with Section 2 of the Voting Rights Act. With Act 7, the state prospectively created two opportunity districts for black voters to elect Supreme Court justices of their choice. Act 7 is thus a material change in circumstance that moves this issue. Justice Johnson, you have a limited amount of time, and your time is over. So I just have one question for you. You're here representing Justice Johnson. Can you speak to the other side's argument that there has been perfect compliance with this? Well, one thing I do want to clarify, Judge Douglas, is it was the Louisiana Supreme Court that agreed that Justice Johnson would sit as chief justice on the court. And so the federal issue that arose in 2012 was effectively dismissed. So I do want to correct that, that that issue in 2012, that was resolved by the Louisiana Supreme Court, and the Louisiana Supreme Court said that had nothing to do with the consent judgment. So I think that is of critical importance. So that's not evidence of Louisiana backsliding from the decree, is it? That is not evidence in the federal case of the consent judgment coming into play, Judge Duncan. I think that's a yes. OK. Can you think of anything in the record that shows, I was going through the various orders, because we see consent decrees with some regularity, and often the district court is issuing orders and saying, do this, do that. I don't see any orders beyond just, yes, I'm approving Act 776, and I'm recognizing that the attorney's fees motion has been settled. I'm recognizing that Justice Johnson's 10-year question has been settled. Like, I don't see any orders in here after 1992 where the district court is actually enjoining anything or perpetuating compliance with the consent decree. Am I misunderstanding the docket? I think the issue with the docket is there was no request for dissolution under 60B. Sorry, I'm talking about requesting for enforcement. So often in these, I'm sure you're familiar, in these institutional reform cases, we'll see the district court says, hey, listen, you need to integrate this, or you need to do this compliance remedy this way, or something. But I'm not seeing anything in this docket where the district court does anything after 1992 to enforce the terms of the consent decree like that. All I'm seeing are just sort of recognitions of settlements between the parties. There are recognitions and there are amendments because the parties were in agreement up until that point in time. Thank you. So unless there are further questions, I'd like to see that. Thank you. Thank you, Your Honors. I'd like to hit on a couple of things very quickly. First of all, we're not operating on a blank slate. If this decree, never were we ever operating on a blank slate. Federal law still applied, even if this judgment was over or vacated 30 years ago. There was always the specter of federal law. Congress passed Section 2 of the Voting Rights Act. It applies to us. And so does the federal constitution. So we're not operating on a blank slate. The judge would still be using the wrong standard if you don't correct the ruling that's before you. It's not moot if we have to go back. And we need, at a minimum, a month more vacatur. We could never say that we could not change anything in the future. No public official can conceivably really commit to that. And I don't believe that a federal court would appropriately require us to agree to that. It's simply an impossible standard. The three predominant public officials that signed this document are dead. How could they? It's ridiculous to suggest that we could ever agree that nothing bad will happen in the future. We don't know. We hope not. But federal law protects from that. It provides a cause of action if something in the future goes wrong. And that's where the remedy would be. Counsel, let me ask you. Is it your view that we couldn't send this back on a limited remand to dissolve the consent decree in light of Act 7? Is it your view that we don't have the authority to do that? I wouldn't say you don't have the authority. I think it would not be the right thing to do. I think that a month fewer vacatur is the proper thing to do if you send it back. And I think that the appropriate thing- Because it matters to you whether or not the consent decree is dissolved based on a determination about 776 or Act 7. It matters to you. It matters to me the standards that were applied to the consent decree, both in its interpretation and the legal standards that were applied under prong three. And I would like to address very quickly the prong one, prong two standards. Because under prong one, it's very clear under this court's precedent in through four that prong one is you interpret the document. It is a substantial compliance standard, which is correct under Louisiana. I guess I'm trying to summarize. So it matters to you because you want this court to determine that Louisiana has, at all times in the past, however far back we need to go, Louisiana has complied with the consent decree. It's been in compliance. You want that determination from this court. Is that right? That part of our argument is that we have, in fact, complied and that we were in compliance as early as- I know I can't call it a settlement. Irrespective of anything that you may agree with from this side, you want that determination. Yeah, I think there are two important aspects of this court's ruling. One is the actual interpretation of the document. That's what you're speaking to. And the other are the legal standards that were applied to us in carrying our burden of proof under 60B. And I think that's extremely important, that my friends on the other side have illustrated how important that is by their very arguments. Prong one, the standards are clear, I believe, under 4. And on prong two, we're subject to this strange now burden that the district court below has imposed on us that includes a Dowell Vestiges standard, also includes a Jingles standard, and requires us to prove evidence of something in the future that we can- If the consent decree was dissolved by an order in the district court, would you still have to do all of that? All the things you're complaining about- I would have to go back and we would have to prove that we've met our burden. And the district court would still be being asked to apply the Dowell standard under their version of the 60B. In fact, it's embedded in their very request to moot is the standard that is in dispute as to whether it's correct or not. Is that correct? Thank you, Judge Elrod. That would only memorialize an incorrect legal standard in the law, having it been applied again, and yet we would win. So it doesn't make sense to not correct the legal standards that apply. Well, you would win, General, in some strange way. You would win in the sense that the plaintiffs would be able to continue to argue that any consent decree in this state, including this one, has a future compliance obligation that is written in invisible ink. And, Your Honor, that is happening in the New Orleans consent decree case. It is happening, but I would like- I'm confused by the invisible ink statement. Explain to me what the language in paragraph C8 means when it says that the reapportionment shall be effective on January 1, 2000, and-I don't want to forget the and clause- and future Supreme Court elections after that effective date. That's not invisible to me. No, it's not invisible ink. But, I mean, it was put in place for future elections, and I think that there's never been any indication that we were going to go back to a split district. But I would question the ability of any public officials to ever commit to something never changing in the future, especially when we are subject to federal legislation. General, I thought this court in Allen has already interpreted that language as not including the redistricting of every single Supreme Court district ad infinitum. That was the holding of this court in Allen. It was a holding of this court in Allen, and, quite frankly, Your Honor, we were not permitted to discuss Allen at this hearing below in the transcript. We were told not to go there, if I could quote the district court judge. Well, it's precedent of our court. So it's precedent of this court. We agree with it, and I think that- There was discussion about the evidence. There was discussion about the evidence. I appreciate my friend on the other side explaining that the issue with Justice Johnson was a determination within the Louisiana Supreme Court. It was resolved by the Louisiana Supreme Court, and it mooted any further litigation, which was on appeal at the Fifth Circuit, because I was in that case, and I had filed an appeal. The whole issue went away when the Louisiana Supreme Court decided, and that's all in this record. The 30 years is evidence. Showing that we haven't done anything that the parties could complain about for 30 years, it is evidence, and it certainly has been evidence in other cases where the parties have shown that they haven't ever done anything that would violate the decree. So I think the passage of time certainly should be evidence. It is evidence in other cases. Section 2, the argument that we are being- that we should be held in some bad faith or that it is evidence of bad faith that we argue that Section 2 should apply to judicial elections, we are permitted, I believe, without being held to a standard of bad faith, to preserve an issue for review that we believe may be a viable legal issue in the United States Supreme Court. In fact, we waive it if we don't preserve it. So I don't think that it is fair to say that that is evidence of our bad faith. Every party is entitled to preserve issues for review. So the argument that we didn't carry our burden of truth and that there was, in fact, evidence of bad faith is simply incorrect. And so we have complied with this judgment. I would say that in closing, if nothing else, this court should month and wear the decision below. There is an improper standard. It does multiply embedding improper standards. General, just so I can understand your argument, if we did something like that, first of all, that would imply a finding of mootness. Secondly, we would have to issue an order explaining what the correct standard is. We can't just say, well, we vacate everything. I would absolutely urge you to do that. I think that it is important to the state and will be important to avoid us repeatedly being here again and again with similar problems. I mean, the standards that have been imposed upon us in this particular case, I mean, you get far more complex consent decrees. And, you know, you may wonder why we would ever sign one. Frankly, I don't think it's a very good idea, but they do. Parties do sign them. States do sign them. We do try to avoid future litigation. But this only proves to show that we are going to basically be strung up for our good faith and trying to settle a case because it's going to continue to have tentacles even 30 and 40 years down the line, even when we've done nothing to violate the order for over 30 years. So we would ask you to dismiss the case, vacate the order, reverse the judgment below, and at a minimum, at a minimum, move forward with the decision below. Thank you, counsel. That will conclude the court's docket for this week.